TM:CAC
F#: 2010R02407

**12M946**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

SCOTT BRANNIGAN,
    also known as "Spider,"
NESTOR CARDENAS,
    also known as "Nesto,"
[REDACTED]
MIGUEL MAISONET,
    also known as "Mike,"
FRANK MIRANDA,
    also known as "Afro,"
SAMUEL MOYA,
    also known as "Sammy,"
JOSE PEREZ,
    also known as "Rusty,"
KEITH TERRY and
JONDALE WILLIS,
    also known as "Jay,"

              Defendants.

To Be Filed Under Seal

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANTS

(T. 18, U.S.C.,
§ 922(a)(1)(A))

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        THOMAS KALOGIROS, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") duly appointed according to law and acting as such.

        Upon information and belief, on or about and between October 21, 2010 and October 10, 2012, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SCOTT BRANNIGAN, also known as "Spider," NESTOR CARDENAS, also known as "Nesto," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ MIGUEL MAISONET, also known as "Mike," FRANK MIRANDA, also known as "Afro," SAMUEL MOYA, also known as "Sammy," JOSE PEREZ, also known as "Rusty," KEITH TERRY and JONDALE WILLIS, also known as "Jay," together with others, not being licensed importers, licensed manufacturers, licensed dealers or licensed collectors of firearms, did knowingly and willfully engage in the business of dealing in firearms.

(Title 18, United States Code, Section 922(a)(1)(A))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with ATF for approximately five years, and I am currently on the ATF Joint Firearms Task Force ("JFTF"). As a Special Agent with the ATF, I have investigated federal criminal violations including illegal firearms dealings, robberies and narcotics trafficking. I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants,

---

[1] Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendants as described in greater detail below, I have not set forth every fact learned during the course of this investigation.

2

monitored wiretaps, and interviewed civilian witnesses. My information in this case comes from reviews of records of JFTF and the NYPD Brooklyn North Gang Squad ("BNGS"), conversations with ATF and BNGS officers, and other official records of government agencies.

2. Since approximately October 2010, the JFTF and BNGS have been conducting a joint investigation into firearms trafficking among the members of three closely related Brooklyn-based motorcycle gangs: the Forbidden Ones, the Dirty Ones and the Trouble Makers. During the course of the investigation, JFTF and BNGS received information about these motorcycle gangs from a cooperating informant ("CI"), who is a member of the Forbidden Ones motorcycle gang.[2]

3. According to the CI, the defendants SCOTT BRANNIGAN, NESTOR CARDENAS, ███████ and JOSE PEREZ are members of the Forbidden Ones. The defendants FRANK MIRANDA, SAMUEL MOYA

---

[2] The CI's information has been corroborated by independent evidence, including consensual recordings and observations by law enforcement. The CI has three prior felony convictions, including convictions for burglary, grand larceny and escape. During debriefing, the CI advised the government that he has been involved in narcotics trafficking involving crack cocaine and discharging a weapon in connection with drug trafficking. The CI has also admitted to carrying out numerous stabbings while in prison, which ultimately earned him the Forbidden One's "bangout patch," discussed infra note 3. The CI provided information to the government initially to reduce his state sentence. The CI continues to act as an informant in exchange for payment.

3

and KEITH TERRY are members of the Dirty Ones. The defendants MIGUEL MAISONET and JONDALE WILLIS are members of the Trouble Makers. The CI also informed law enforcement that the defendants are all "1% patched" members of their respective motorcycle gangs. Based on my training, experience and knowledge of this investigation, including conversations with the CI, members who have a "1% patch" are "outlaws" who reject main-stream society and live outside of the law, often engaging in criminal activity, including the purchasing and selling of firearms.[3]

4. Given the CI's membership in the Forbidden Ones, the CI was aware of various members in each motorcycle gang who were engaged in firearms trafficking. To facilitate purchases of these weapons, JFTF and BNGS used undercover officers posing as firearms customers ("UC 1, UC 2, UC 3 and UC 4").

---

[3] Based on my training, experience and knowledge of this investigation, including conversations with the CI, the Forbidden Ones motorcycle gang also provides certain members with a "bangout patch." This patch depicts two handguns crossing each other, which signifies that the member has assaulted or has had one or more confrontations with police officers. Defendants BRANNIGAN, CARDENAS, ███ and PEREZ are "bangout patch" members in addition to being "1% patch" members.

4

5. On or about October 26, 2010, JFTF and BNGS received information from the CI that the defendant JOSE PEREZ, also known as "Rusty," was selling an assault rifle. The CI arranged to purchase the rifle from PEREZ on October 27, 2010, at 91-08 Rockaway Beach Boulevard, a tattoo parlor operated by the Forbidden Ones. On October 27, 2010, at approximately 4:40 p.m. that day, the CI and UC 1 drove to the Forbidden Ones' tattoo parlor in an undercover police car. While UC 1 remained in the car, UC 1 watched as the defendant PEREZ met the CI. After the CI received instructions from PEREZ, UC 1 and the CI drove to a residence on 185 Beach 91st Street, in Far Rockaway, New York. Upon their arrival at that location, they again met the defendant PEREZ, at which time PEREZ removed a box from a GMC Sport Utility Vehicle parked in front of the residence. The box contained a .762 Yugoslavia model assault rifle and thirty-six rounds of ammunition. UC 1 proceeded to watch the defendant PEREZ sell the rifle and ammunition, which was all contained inside the box, to the CI for $1,000. Thereafter, the CI provided the box containing the rifle and ammunition to UC 1.[4]

---

[4] All transactions between the defendants, the CI and undercover agents discussed herein were captured on either an audio or video recording.

5

6. On or about January 24, 2011, BNGS and JFTF received information from the CI that the defendant SAMUEL MOYA, also known as "Sammy," was selling a .380 caliber pistol for $500. Later that day, at approximately 7:00 p.m., UC 2 drove the CI to 3805 Cypress Avenue, Coney Island, New York. Moments later, UC 2 and the CI were greeted by the defendant MOYA. Soon thereafter, the defendant MOYA sold UC 2 a Davis Industries model P-380, .380 Auto caliber pistol with a defaced serial number and six rounds of assorted ammunition, for $500.

7. On or about May 26, 2011, BNGS and JFTF received information from the CI that the defendant ▓▓▓▓▓▓▓▓▓▓▓▓ was selling a 9mm pistol and a .38 caliber revolver for approximately $1,000. Later that day, at approximately 7:10 p.m., the CI informed UC 3 that the defendant ▓▓▓ had arrived at a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York. Thereafter, UC 3 entered the tattoo parlor and purchased a 9mm AA Arms Inc., model AP9 pistol with a defaced serial number and a .38 caliber Hopkins & Allen revolver from the defendant ▓▓▓▓▓▓ for $700 and $300, respectively.

8. On or about January 13, 2012, BNGS and JFTF received information from the CI that the defendant SCOTT BRANNIGAN, also known as "Spider," brought approximately eight firearms back from Florida to sell in New York City. Several

days later, on or about January 17, 2012, at approximately 2:30 p.m., UC 2 and the CI drove to the defendant BRANNIGAN's residence at 534 Beach 128th Street in Belle Harbor, New York, where they were greeted by the defendant BRANNIGAN in front of his house. UC 2 and the CI then followed the defendant BRANNIGAN into the garage of the house, where the defendant BRANNIGAN sold them eight firearms and 819 rounds of assorted ammunition for $4,700. The firearms included a Trocaula, model 803, .38 caliber rifle; a Bond arms, model Texas Defender, .38 caliber derringer; a Charter arms, .22 caliber revolver; a Hi-Standard, model B .22 caliber pistol; a Bryco Arms, model T380, .380 caliber pistol; a Cobra, model CE32 .32 caliber pistol; a Colt model .22 caliber pistol; and a Ruger model Mark III .22 caliber pistol.

9. On or about June 27, 2011, JFTF and BNGS received information from the CI that the defendant BRANNIGAN had again traveled to Florida and brought back two firearms to sell in New York City. At approximately 4:20 p.m. that same day, UC 2 and the CI drove to the defendant BRANNIGAN's residence. There, the defendant BRANNIGAN greeted UC 2 and the CI and sold them one shotgun, one rifle and 595 rounds of ammunition for $2,300.

10. On or about April 17, 2012, BNGS and JFTF received information from the CI that the defendant BRANNIGAN brought several firearms, ammunition and a black powder cannon

7

back from Florida to sell in New York City. Later that day, at approximately 2:50 p.m., UC 2 and the CI drove to BRANNIGAN's residence. At the location, the defendant BRANNIGAN sold UC 2 and the CI six firearms and 282 rounds of ammunition for $4,000. The firearms included a Rossi .243 caliber rifle; a Dan Wesson, .357 magnum caliber revolver; a Raven Arms model MP-25, .25 caliber pistol; a Taurus model Public Defender—The Judge, .410 caliber revolver; a Colt model MKIV, .45 caliber pistol; and a Colt model MKIII, .357 caliber revolver.

11. While at BRANNIGAN's residence, UC 2 also discussed the purchase of a black powder cannon that defendant BRANNIGAN had transported from Florida and was storing at 15 Thames Street, Brooklyn, New York - the Forbidden Ones' club house. UC 2 agreed to purchase the cannon from the defendant BRANNIGAN once UC 2 could examine it. Later that day, at approximately 4:40 p.m., UC 2 and the CI drove to the Forbidden Ones' club house where they retrieved a black powder cannon and loaded it into UC 2's undercover car. UC 2 subsequently paid defendant BRANNIGAN $2,000 for the cannon.

12. On or about June 1, 2011, BNGS and JFTF received information from the CI that the defendant JONDALE WILLIS, also known as "Jay," was selling a 12-gauge shotgun, and that another individual, "John Doe," was selling a .380 caliber pistol.

13. On or about June 2, 2011, at approximately 12:30 p.m., the CI notified UC 4 that both the defendant JONDALE WILLIS and John Doe were at a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York. Moments later, UC 3 and UC 4 parked an unmarked police car outside of the tattoo parlor. UC 4 entered the tattoo parlor while UC 3 remained in the undercover car. Inside the tattoo parlor, UC 4 purchased a Winchester model 12, 12-gauge shotgun from the defendant WILLIS for $350.

14. On or about September 25, 2012, BNGS and JFTF received information from the CI that the defendant WILLIS was selling a firearm.

15. On or about September 27, 2012, at approximately 3:15 p.m., UC 4 and the CI drove to a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York, where they met the defendant WILLIS out front. WILLIS then invited UC 4 and the CI to follow him into the tattoo parlor where he sold them one Astra, model Cub, .22 caliber pistol, and 73 .22 caliber rounds of ammunition for $300.

16. On or about June 27, 2011, BNGS and JFTF received information from the CI that the defendant MIGUEL MAISONET, also known as "Mike," was selling a .38 caliber pistol for $500.

17. On or about June 28, 2011, at approximately 5:20 p.m., UC 4 drove to a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York, where the defendant MIGUEL MAISONET sold a Lorcin, Model L380, .380 caliber pistol with twenty-two rounds of ammunition to UC 4 for $500.

18. On or about July 27, 2011, BNGS and JFTF received information from the CI that the defendant MIGUEL MAISONET, also known as "Mike," was selling an assault rifle for $1,000. At approximately 1:50 p.m. that day, UC 4 drove to a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York, where the defendant MIGUEL MAISONET sold a Keltec model Sub 2000, 9mm caliber rifle and 38 rounds of 9mm ammunition to UC 4 for $1,000.

19. On or about November 14, 2011, BNGS and JFTF received information from the CI that the defendant KEITH TERRY wanted to sell a .357 caliber revolver for $600. At approximately 3:20 p.m. that day, UC 3 drove an unmarked police car to a tattoo parlor, located on the second floor of 1129 Myrtle Avenue, Brooklyn, New York, where the CI was waiting. Moments later, the defendant KEITH TERRY arrived in a separate car, entered the unmarked car, and sold UC 3 a Smith & Wesson model 66, .357 caliber revolver for $600. UC 3 also watched the

defendant KEITH TERRY give the CI $100 as commission for facilitating the firearms transaction.

20. On or about July 30, 2012, BNGS and JFTF received information from the CI that the defendant NESTOR CARDENAS, also known as "Nesto," had three handguns for sale.

21. On or about July 31, 2012, at approximately 2:20 p.m., UC 4 and the CI drove in an unmarked police car to 194 Humboldt Steet in Brooklyn, New York, where they met the defendant NESTOR CARDENAS. CARDENAS was sitting inside a first-floor apartment window of 194 Humboldt Street. The CI approached the window and the defendant CARDENAS handed the CI a bag. The CI then went back inside the unmarked police car and gave the bag to UC 4. Upon opening the bag, UC 4 saw three handguns: a Rohm, model 17, .38 caliber derringer; a Jennings, model Bryco 59, 9mm pistol; and an Arms Company, .22 caliber revolver. After examining the guns, UC 4 got out of the car and approached the defendant CARDENAS at the window to pay for the handguns. The defendant CARDENAS instructed UC 4 to give the CI the money for the guns. UC 4 complied with the instructions and provided the money to the CI, which the CI in turn gave to the defendant CARDENAS.

22. On or about August 21, 2012, BNGS and JFTF received information from the CI that the defendant FRANK MIRANDA had a firearm to sell.

23. On or about August 22, 2012, at approximately 3:00 p.m., UC 4 and the CI drove an unmarked police car to the Dirty Ones' tattoo parlor, where they were greeted outside the shop by the defendant FRANK MIRANDA. The defendant MIRANDA instructed the CI and UC 4 to follow him into the tattoo parlor located at 1129 Myrtle Avenue, where he proceeded to sell UC 4 a Walther model 4, .32 caliber pistol and six .32 rounds of ammunition for $700.

24. I have spoken with an ATF interstate nexus expert, who informs me that all of the above-mentioned firearms and ammunition were manufactured outside the State of New York.

25. A review of ATF records has shown that none of the defendants are licensed importers, licensed manufacturers, licensed dealers or licensed collectors of firearms.

26. Based on the confidential nature of the investigation described herein and the potential risk of flight by one or more of the defendants, I respectfully ask that this affidavit be filed under seal until further order of the Court.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the defendants SCOTT BRANNIGAN,

also known as "Spider," NESTOR CARDENAS, also known as "Nesto," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ MIGUEL MAISONET, also known as "Mike," FRANK MIRANDA, SAMUEL MOYA, also known as "Sammy," JOSE PEREZ, also known as "Rusty," KEITH TERRY and JONDALE WILLIS, also known as "Jay," so that they may be dealt with according to law.

　　　　　　　　　　　　　　　　THOMAS KALOGIROS
　　　　　　　　　　　　　　　　Special Agent
　　　　　　　　　　　　　　　　Bureau of Alcohol, Tobacco,
　　　　　　　　　　　　　　　　Firearms and Explosives

Sworn to before me this
12th day of October, 2012

THE HON. LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK